IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : CASE NO.: 1:12-cr-40 (WLS) |
| | : |
| BRAD HEARD, SR., BRAD HEARD, JR., LAWTON C. HEARD, and CRAIG A. HOWELL, | : |
| | : |
| Defendants. | : |

## ORDER

Before the Court are three motions: Brad Heard Sr.'s Motion to Dismiss Count 15 and "Scheme Acts" 1 and 2, or, in the Alternative, Motion to Sever Said Items for Separate Trial (Doc. 37); Brad Heard Jr.'s Motion to Sever Counts of the Indictment (Doc. 38); and Lawton C. Heard's Motion to Sever Count 16 of the Indictment (Doc. 41). For the following reasons, Heard Sr.'s and Lawton Heard's motions (Doc. 37, 41) are **DENIED** and Heard Jr.'s motion (Doc. 38) is **GRANTED in part** and **DENIED in part**.

### PROCEDURAL and FACTUAL BACKGROUND

This case involves alleged acts of bank fraud and commercial bribery at Southwest Georgia Farm Credit ("SWGFC") in Bainbridge, Georgia. On November 15, 2012, a federal grand jury returned a twenty-seven-count indictment against Defendants Brad Heard Sr., Brad Heard Jr., Lawton C. Heard, and Craig A. Howell. The Indictment alleges the Defendants bribed SWGFC's chief financial officer, Larry Malone, into issuing millions of dollars in SWGFC loans. Allegedly, the underlying loan applications often contained fraudulent and false information. The Indictment also alleges that Brad

1

Heard Sr., Lawton Heard, and Craig Howell acted as "straw borrowers" for Brad Heard Jr.—in other words, they borrowed loans for Heard Jr., to conceal him as the true borrower, because borrowers of more than $6 million required approval from AgFirst Farm Credit Bank, which funds SWGFC.

The Heard defendants have challenged a number of counts in the Indictment. The Court held a hearing on these motions on April 15, 2013. The contents of those motions and the argument and evidence from the hearing are as follows.

## I.     **Brad Heard Sr.'s Motion to Dismiss or to Sever Count 15.**

On January 8, 2013, Brad Heard Sr. (hereinafter "Heard Sr.") moved to dismiss Count 15 of the Indictment and certain acts incorporated by reference into that offense. (Doc. 37.) Count 15 charges Heard Sr. with commercial bribery under 18 U.S.C. § 215(a) for paying Malone $20,750 on December 10, 2002 and receiving a December 19, 2002 loan in the amount of $473,916. Heard Sr.'s payment and Malone's approval of the loan are listed as "Acts in Furtherance of the Scheme to Defraud" for Counts One through Fourteen, all of which charge various defendants with bank fraud under 18 U.S.C § 1344. These particular acts are not explicitly incorporated into substantive bank fraud counts.

Heard Sr. claims the Government knew about this transaction in 2008. In his motion, he argued he was prejudiced by the Government's failure to present an indictment earlier because he does not remember that loan. In the alternative, Heard Sr. urges the Court to sever the acts underlying Count 15 from the indictment. Per Heard Sr., the facts related to Count 15 are remote and, unlike the other counts, do not contain "allegations of phony collateral, lending or credit limits, straw borrowers, diverted and disguised kickback payments or speculation in resort real estate." (Doc. 37 at. 7.)

2

During oral argument, counsel for Heard Sr. conceded that, since the filing of his motion, Heard Sr.'s memory had been refreshed and he could not show prejudice as to the motion to dismiss. He requested, however, that his motion stand because the delay between those acts and the rest of the alleged scheme also related to his motion to sever. As to that motion, Heard Sr. argued Count 15 should be severed because it related to a different type of transaction than the other charges. Specifically, he claims the payments underlying Count 15 arose from a business called Environmental Erosion Control ("EEC"). Heard Sr. maintains that his former wife and Sandy Malone, Larry Malone's wife, jointly owned EEC. The payments Heard Sr. made to the Malones lawfully arose from that business relationship.

To establish these facts, Heard Sr. called Sandy and Larry Malone. Sandy Malone testified she did not remember operating EEC. She testified she was probably one of the entity's owners and that her husband often had her sign various forms she did not fully understand. Sandy Malone explained her husband may have asked her to sign EEC forms for purported tax breaks. She knew her husband received money from the Heard family, but she did not know if those funds were related to EEC.

Larry Malone testified he made his wife the co-owner of EEC because it would have been a conflict of interest for him, the chief lending officer of SWGFC, to have a business relationship with Heard Sr. He said EEC never made a profit and dissolved shortly after its formation. He did not recall why Brad Heard Sr. gave him the check in 2002. He may have asked Brad Heard Sr. for the money to buy a truck.

The Government did not call witnesses. Nevertheless, the Government argued Count 15 involved the same scheme as the rest of the indictment—namely, kickbacks to Larry Malone to secure SWGFC loans. Additionally, the Government maintains the

3

testimony from the Malones at most goes to the strength of Count 15, not whether joinder is proper.

## II. **Brad Heard Jr.'s Motion to Sever Counts of the Indictment**

On January 21, Brad Heard Jr. ("Heard Jr.") moved to sever Count 27 of the indictment. (Doc. 38.) Count 27 alleges that Heard Jr. concealed assets during a bankruptcy proceeding on debtor Backwoods Outdoors LLC, a business Heard Jr. operated. Heard Jr. allegedly entered a side deal with the buyer of Backwoods that provided the purchaser would pay Heard Jr. $300,000 personally for the business. During the proceeding, Heard Jr. allegedly concealed the existence of that side deal.

Heard Jr. argues Count 27 should be severed because the Government improperly joined it under Federal Rule of Criminal Procedure 8, and it would cause undue prejudice under Rule 14. He claims the concealment count is unrelated to and unlike the rest of the counts in the Indictment. The Indictment primarily alleges acts of bank bribery and fraud, while Count 27 involves an unrelated bankruptcy proceeding. Heard Jr. maintains the Government did not provide any allegations connecting these counts. Furthermore, the presence of Count 27 is unduly prejudicial because it implies he was dishonest during a judicial proceeding. He may wish to also testify as to some of the counts but not others.

During the hearing, Heard Jr. called Sandy and Larry Malone. Sandy Malone testified she did not have interest or ownership in Backwoods Outdoors. Nor did she know of any relationship between Backwoods Outdoors and the payments Heard Jr. allegedly made to her husband. Larry Malone testified he did not own any interest in Backwoods Outdoors. He did not make any loans to the entity itself, but one of the loans he made to Heard Jr. may have been used at Backwoods. Additionally, Malone testified

he made one of the loans to Heard Jr. after the pair discussed Malone taking a possible interest in the business. These alleged plans never materialized. Malone did not benefit from the sale of Backwoods Outdoors.

In opposition, the Government argued Count 27 stemmed from the rest of the counts because SWGFC loaned Heard Jr. money for Backwoods. He then protected that money by concealing the side deal regarding the sale of Backwoods during the bankruptcy proceeding. Further, the Government contended Count 27 had the same universe of witnesses as the other counts and is a financial crime of similar size and scope.

### III.     Lawton Heard's motion to sever Count 16.

Lawton Heard moves to dismiss Count 16. Count 16 alleges Lawton Heard paid Malone $30,000 and received a $100,000 loan on July 1, 2005. He claims this transaction is not part of the overall scheme alleged in the Indictment. Like Count 15, the acts incorporated in Count 16 are listed as "Acts in Furtherance of the Scheme to Defraud."

Lawton Heard also called Sandy and Larry Malone. The former testified she had little recollection of the $30,000 payment but believed it arose from advice her husband gave to Lawton Heard regarding some property. Larry Malone testified Lawton Heard gave him the $30,000 as a finder's fee for property Lawton Heard eventually purchased.

The Government did not present evidence. Counsel for the Government argued the information about the $30,000 loan went to trial evidence, specifically intent, but not to whether joinder is proper.

## DISCUSSION

### I.     Motion to Dismiss Count 15.

As mentioned *supra*, Defendant Brad Heard Sr. moved to dismiss Count 15 under Federal Rule of Criminal Procedure 48(b) because of a pre-indictment delay. Courts analyze pre-indictment delays under the Fifth Amendment's due process clause. *United States v. LeQuire*, 943 F.2d 1554, 1560 (11th Cir. 1991). To establish a constitutional violation from such a delay, the defendant must show that (1) the delay caused actual prejudice to his defense, and (2) the delay was the product of deliberate action by the government designed to gain tactical advantage. *United States v. Benson*, 846 F.2d 1338, 1341 (11th Cir. 1988) (citing *United States v. Caporale*, 806 F.2d 1487, 1514 (11th Cir. 1986)).

Heard Sr.'s concession he cannot show prejudice is fatal to his motion to dismiss. "The standard of prejudice is fairly stringent." *Stoner v. Graddick*, 751 F.2d 1535, 1544 (11th Cir. 1985). The defendant must demonstrate *actual* prejudice and "not merely the real possibility of prejudice inherent in any extended delay." *Id.* (quoting *United States v. McGough*, 510 F.2d 598, 604 (5th Cir. 1975)). Therefore, "speculative allegations, such as general allegation of loss of witnesses and failure of memories, are insufficient to demonstrate . . . actual prejudice . . . ." *United States v. Warren*, 772 F.2d 827, 836 (11th Cir. 1985). The defendant must show the delay prejudiced his ability to provide a meaningful defense. *United States v. Butler*, 792 F.2d 1528, 1533–34 (11th Cir. 1986). He must be substantially prejudiced. *Stoner*, 751 F.2d at 1541.

Because he cannot show prejudice, Heard Sr.'s motion to dismiss is **DENIED**.

## II. <u>Motions to Sever:</u>

Federal Rule of Criminal Procedure 8 allows an indictment to join offenses and defendants if the joinder satisfies certain criteria.  Fed. R. Crim P. 8. Heard Sr., Heard Jr., and Lawton Heard argue the Government did not meet those criteria as to Counts 15, 27, and 16, respectively. The Court finds Counts 15 and 16 were properly joined; Count 27 was not.

As an initial matter, all of the parties have analyzed the alleged misjoinders under Rule 8(a). This is understandable because Rule 8(a) deals with multiple offenses, while the text of Rule 8(b) would seem to address only the joinder of defendants. Despite the ambiguous drafting of Rule 8, "[i]t is well established that Rule 8(a) applies only in cases involving a single defendant charged with multiple offenses, whereas Rule 8(b) governs in cases involving multiple defendants." *United States v. Kopituk*, 690 F.2d 1289, 1312 (11th Cir. 1982) (collecting cases); *United States v. Meester*, 762 F.2d 867, 883 (11th Cir. 1985) ("Fed. R. Civ. P. 8(b), rather than 8(a), governs joinder in cases of multiple defendants.").  This distinction is important because Rule 8(b) is more restrictive than Rule 8(a). Rule 8(a) allows the joinder of claims of "the same or similar character," while Rule 8(b) does not. Fed. R. Civ. P. 8. If it were otherwise, "some defendants could be charged with crimes wholly unrelated to the acts or transactions that justified joining the defendants, solely because those unrelated crimes are of a similar character to counts more properly charged." 1A Charles Alan Wright *et al*, *Federal Practice and Procedure Criminal* § 144 (4th ed.).

Rule 8(b) allows joinder of defendants when

they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

7

> Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). To show that each count is a part of the "same series of acts or transactions," the Government must establish that "the acts alleged are united by some substantial identity of facts and/or participants." *United States v. Wilson*, 894 F.2d 1245, 1253 (11th Cir. 1990) (quoting *United States v. Morales*, 868 F.2d 1562, 1567 (11th Cir. 1989)). "When . . . the connection between different groups is limited to a few individuals common to each but those individuals commit separate acts which involve them in separate offenses with no common aim, then the requisite substantial identify of facts or participants is not present." *United States v. Weaver*, 905 F.2d 1466, 1477 (11th Cir. 1990) (quoting *United States v. Nettles*, 570 F.2d 547, 551 (5th Cir. 1978)). Likewise, "[w]hile criminal acts of several defendants may be similar in nature, these acts cannot be properly joined in a multiple defendant trial if different facts and circumstances must be established to support the alleged violations." *Id.* (quoting *United States v. Gentile*, 495 F.2d 626, 630 (5th Cir. 1974)).

Rule 8 is a pleading requirement. *See United States v.* Dominguez, 226 F.3d 1235, 1240 (11th Cir. 2000); *United States v. Morales*, 868 F.2d 1562, 1567 (11th Cir. 1989). Therefore, the Court looks first to the face of the indictment to determine if joinder is proper. *Morales*, 868 F.2d at 1567. If the indictment fails to evince a connection, the Government may proffer evidence to show that joinder is proper. *Dominguez*, 226 F.3d at 1240–42.

Courts construe Rule 8 broadly in favor of initial joinder. *Weaver*, 905 F.2d at 1476. But "[a]lthough one of the goals of joinder is to promote judicial economy, a countervailing purpose of Rule 8(b) 'is to prevent the 'cumulation of prejudice [growing

8

out of] charging several defendants with similar but unrelated offenses." *Id.* at 1477 (quoting *United States v. Bova*, 493 F.2d 33, 35 (5th Cir. 1974)). The joinder rules, therefore, mitigate the possibility that evidence from one count will spill over and taint the defense on another count. *See United States v. Levine*, 546 F.2d 658, 662 (5th Cir. 1977).

### A. <u>Counts 15 and 16:</u>

The Court denies Heard Sr.'s and Lawton Heard's motions to sever. The Indictment evinces a sufficient connection among Counts 15 and 16 and the rest of the Indictment and codefendants to justify joinder. In fact, the Indictment plainly alleges a connection between those counts and the overarching straw-borrowing scheme. According to the Indictment, Heard Sr. and Lawton Heard committed the acts incorporated into Counts 15 and 16 in "[f]urtherance of the [s]cheme to [d]efraud" SWGFC. That scheme is what binds all four codefendants together. Absent prosecutorial bad faith, the Court must accept the Government's allegations as true. *United States v. Andrews*, 765 F.2d 1481, 1496 (11th Cir. 1985).

Moreover, those acts are united by a substantial identity of facts and participants. There is an extensive overlap of participants. It is not as though Heard Sr. and Lawton Heard were random stragglers swept up in some mastermind's plan and loosely tethered to the indictment. Heard Sr. is the father of Heard Jr; Lawton Heard is Heard Jr.'s uncle. Heard Sr. is implicated in eighteen of the twenty-seven counts and thirteen of the fourteen bank fraud counts. The Indictment lists Lawton Heard in fewer counts, but he is still alleged to have borrowed money on false pretenses for the benefit of his nephew. According to the Indictment, both participated extensively in the primary scheme that

created a multiple-defendant case. Counts 15 and 16 both involved Larry Malone, who allegedly made the whole scheme possible.

Counts 15 and 16 and their incorporated acts also involve an identical mode of operation as the rest of the offenses. The Indictment asserts Heard Sr. and Lawton Heard applied for SWGFC loans through Larry Malone and gave money directly to Malone or his wife. It is this same scheme that allegedly allowed the two men to straw borrow for Heard Jr.'s benefit. A defendant gave Malone money; Malone approved SWGFC loans premised on pretexts. Malone is allegedly involved in all of the SWGFC counts. And "[r]epetition of the same mode of operation may . . . provide a strong indication of a larger scheme behind numerous individuals." *Andrews*, 765 F.2d at 1496–97 (citation omitted).

Brad Heard and Lawton Heard do not cite any analogous authority for the proposition that joinder was improper in this case. This is probably because the overwhelming majority of Eleventh Circuit precedent favors joinder. For example, in *United States v. Andrews*, the Eleventh Circuit upheld joinder for a case involving the sale of food stamps. 765 F.3d at 1497. In that case, one defendant, Andrews, met with an undercover agent to buy food stamps and introduced the agent to numerous other defendants. 765 F.3d at 1494–95. Often Andrews would buy food stamps with one of the codefendants but not others. *Id.* Nevertheless, the Eleventh Circuit upheld the joinder because (1) there was a factual similarity among the offenses; (2) there was a substantial overlap of participants, because all of the codefendants operated through Andrews; (3) the codefendants shared the "general object" of trafficking illegally in food stamps; (4) and they displayed a common mode of operation. *Id.* at 1497.

The connection among the counts in this case is similar, if not stronger. Even if the defendants did not always obtain loans for Heard Jr., as Defendants claim, as charged they always shared a general objective of obtaining SWGFC loans through Larry Malone. As in *Andrews*, Counts 15 and 16 involve many of the same participants, the same mode of operation, and a factual similarity among the offenses.

Finally, the Defendants' proffers of evidence do not diminish this finding. It is not even clear that the Court can consider this evidence, as the Court must first evaluate the joinder from the face of the indictment. *United States v. Dominguez*, 226 F.3d 1235, 1240–41 (11th Cir. 2000).  Because the indictment contained a sufficient connection, the inquiry ends there. *Id.* (holding that a defendant cannot attack joinder with trial evidence). But, in any event, evidence that Heard Sr. and Lawton Heard gave Malone money for ostensibly legal purposes is not inconsistent with the alleged scheme. The Indictment, after all, asserts that the Defendants often gave false information and tried to "mislead SWGFC into believing that the proceeds were going to the named borrower." (Doc. 1 at 4.) Further, the indictment lists several other instances where Heard Sr. and Lawton Heard allegedly misrepresented the purpose of other loans.  (*Id.* at 6.) And it is certainly not unheard of for defendants to concoct fronts to conceal their bribes. Moreover, as the Government claims, these initial acts may have provided the relationship for the future straw-borrowing scheme.

For those reasons, the Court finds Counts 15 and 16 and their incorporated acts were part of the same series of acts or transactions justifying joinder.[1] Heard Sr.'s and

---

[1] Neither Heard Sr. nor Lawton Heard have explicitly moved for severance under Federal Rule of Criminal Procedure 14(a). To the extent they assert such a ground, neither has attempted to show any prejudice from the joinder. During the hearing, Heard Sr. argued that the Court should sever Count 15 because of the length of time between it and the other offenses. He admitted, however, he now has recollection of the circumstances underlying that count. It is also unclear how a severance would improve his faded memory.

11

Lawton Heard's motions (Docs. 37, 51) are **DENIED**. The portion of Heard Jr.'s motion (Doc. 38) incorporating Heard Sr.'s arguments as to Count 15 is also **DENIED,** for the reasons stated above.

### B. Count 27.

The joinder of Count 27 violates Rule 8(b). Unlike Counts 15 and 16, Count 27 does not involve a substantial identity of facts and participants. It is not part of a series of acts or transactions involving the other defendants. Actually, there is almost no overlap of facts and participants. According to the indictment, the only participant common to Count 27 and the rest of the indictment is Heard Jr. The allegations involve a different set of facts, a different offense, and an entirely different aim than Counts One through Twenty-Five. Count 27 alleges that Heard Jr. tried to conceal assets—namely, a side deal from the sale of Backwoods Outdoors—from a bankruptcy proceeding. The rest of the Counts involve loans from SWGFC. The indictment does not allege *any* connection between Count 27 and the other counts and defendants.

Because the indictment fails to evince a connection, the Government could have proffered evidence or argument to justify joinder. *Dominguez*, 226 F.3d at 1241. During the hearing, the Government did not submit evidence. Rather, the Government made two arguments in favor of the joinder. Both were meritless.

First, the Government claimed the bankruptcy offense involved the same facts and participants and that the concealment "protected" SWGFC's money from bankruptcy. If that were true, perhaps joinder would have been proper. *See Kopituk*, 690 F.2d at 1314 (holding that joinder of tax offenses was proper where the tax offenses concealed illegal payoffs). But the Government never established it as true or even alleged such in the Indictment. Backwoods Outdoors was the debtor in the bankruptcy

proceeding. And it was Heard Jr., not Backwoods, who received SWGFC loans. The entity's bankruptcy proceeding simply did not involve Heard Jr.'s obligations to SWGFC or his alleged corrupt conduct regarding those loans. At this stage, nothing suggests Heard Jr.'s alleged side deal with the Backwoods Outdoors' buyer had anything to do with SWGFC—or, more importantly, with any of the codefendants. When counsel for the Government says Count 27 involves "the same universe of witnesses," he must have been referring to Heard Jr. as a universe unto himself. Neither the codefendants nor Larry Malone are implicated in Count 27.

Second, the Government argued that the concealment of assets offense was a financial crime of "comparable scope and scale to the others." But it is well settled that similarity is not enough for joinder under Rule 8(b). *Kopituk*, 690 F.2d at 1312.

Therefore, Brad Heard Jr.'s Motion is **GRANTED** as it pertains to Count 27, and Count 27 is **SEVERED** from the other counts of the Indictment.

## CONCLUSION

For those reasons, Heard Sr.'s and Lawton Heard's motions (Docs. 37, 51) are **DENIED**, and Heard Jr.'s motion (Doc. 38) is **GRANTED in part** and **DENIED in part**, as follows: Heard Jr.'s motion is granted as to Count 27 and denied as to Count 15. Count 27 is hereby **SEVERED** from the Indictment.

SO ORDERED this  10th  day of May 2013.

/s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,
UNITED STATES DISTRICT COURT**